**FAIRVIEW HOSPITAL AND HEALTH CARE SERVICES, Appellant,**

v.

**SHELL LAKE INDIANHEAD MEMORIAL HOSPITAL, INC., d/b/a Terraceview Living Center, Appellee.**

**No. 90–5458MN.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1991.

Decided July 30, 1991.

Stephen P. Lucke, argued (Stephen P. Lucke and William A. Cole, on brief), Minneapolis, Minn., for appellant.

Margaret K. Savage, argued (Margaret K. Savage and Paul S. Jacobsen, on brief), Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant, a health care provider, lent money to appellee (engaged in the same

---

*. Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

business) to enable appellee to build a nursing home by means of public financing, to which appellant's claim was to be subordinate. By clever legal maneuvers appellee substituted new bonds for those which had been originally issued at a higher interest rate, but did not pay off appellant's claim, which remained subordinate to the bond issue. Appellant sued appellee on the note it held, but the District Court[1] held that under the terms of the governing documents appellant could not recover. We affirm.

Defendant-appellee Shell Lake Indianhead Memorial Hospital, Inc. d/b/a Terraceview Living Center (hereinafter referred to as TLC) financed the construction of a nursing home in Shell Lake, Wisconsin, in part by tax exempt revenue bonds issued by the City of Shell Lake with federal sponsorship by the Department of Housing and Urban Development (hereinafter referred to as HUD).

Before HUD would participate in the deal it insisted that TLC procure additional financing subordinate to that provided through the revenue bonds.

Appellant Fairview Hospital and Health Care Services (hereinafter referred to as "Fairview") agreed to lend TLC the additional financing required, knowing that its loan was to be subordinate to the revenue bonds and to HUD's rights, and that HUD also insisted that Fairview's loan was not to be secured by a second mortgage nor was to be discharged by a fixed schedule of repayments, but that payments to Fairview were to be made only from TLC's receipts and with the written approval of HUD.

By indenture of trust between the city and First Bank (N.A.) as trustee, the bank became trustee of the revenue bond issue of the city. As security for the Series 1982 bonds, TLC executed a mortgage note of April 1, 1982 (App. 20–21) and a mortgage, both of which were assigned to the trustee. The mortgage and mortgage note were insured by HUD.

Section 308(4) of the Indenture permitted redemption of the Series 1982 bonds from prepayments of principal on the mortgage note (App. 98–99).

As required by HUD, TLC's obligation on the loan from Fairview was evidenced by a "Residual Receipts Note" of May 26, 1982 (App. 16–18) which provided *inter alia:*

(1) Principal and interest on this note shall be due and payable on the maturity date of the note and mortgage insured by the Secretary of Housing and Urban Development financing FHA Project No. 075–43090–NP, provided that *if the aforesaid insured note is prepaid in full,* the holder of this note, at its option and without notice, may declare the whole principal sum or any balance thereof, together with interest thereon, immediately due and payable.

(2) *Prepayments to principal and interest on this note may be made only from the residual receipts fund,* as that term is defined in the Regulatory Agreement between the Maker and the Secretary executed in connection with the above project, *and only after obtaining the prior written approval of the Secretary* acting by and through the Federal Housing Commissioner. Such prepayments may be made only after final endorsement of the note for insurance by the Secretary and after the end of a semiannual or an annual fiscal period. If an unauthorized prepayment is accepted, the funds shall be held by the Payee in trust for the project. (Italics supplied)

Thus Fairview's right to accelerated payment of the Residual Receipts Note arises only if the Mortgage Note payable to the Indenture trustee is prepaid in full.

By reason of TLC's strategic steps that condition never was fulfilled.

Section 308(4) of the original Indenture provided that the Series 1982 bonds could be redeemed before maturity "from prepayments of principal made with respect to the Mortgage Note." (App. 99). By a

---

**1.** The Honorable Harry H. MacLaughlin, of the District of Minnesota, Fourth Division.

supplemental indenture of December 1, 1988, TLC procured an amendment to Section 308(4) adding the words "or from a payment made by the Owner in lieu of prepaying the Mortgage Note" (App. 40) thereby permitting redemption of the 1982 bonds without making prepayments of principal on the Mortgage Note.

The Mortgage and the Mortgage Note were then also amended in several respects, notably to reflect the lower interest rate on the new 1988 refunding bonds used to generate funds to redeem the 1982 bonds. The Mortgage and Mortgage Note were then assigned to the trustee for the new 1988 bond issue, and remain in force (App. 40). Hence, the Mortgage Note was never "prepaid in full" and the acceleration clause in the "Residual Receipts Note" on which appellant sued was never triggered or activated. The District Court therefore properly granted summary judgement as a matter of law for TLC.

As subsidiary arguments, appellee contends that appellant violated the implicit covenant of good faith and fair dealing (Restatement 2nd of Contracts § 205); and the doctrine of prevention of performance (Restatement, Contracts, § 295). These contentions do not require serious consideration in view of the plain and express language of the documents involved. Likewise, by stipulation of the parties, final judgement was entered for TLC on Count IV of the Complaint, as to which the District Court had originally held that TLC was not entitled to summary judgement. (Appellant's Addendum, 14–[17], Supplemental order of August 27, 1990, dismissing Count IV without prejudice).

Accordingly the judgement of the District Court is

AFFIRMED.